Mark Ankcorn, SBN 166871
Ankcorn Law Firm, PC
110 Laurel Street
San Diego, CA  92101
Telephone:  (619) 238-1811
Facsimile:   (619) 544-9232
mark@cglaw.com

Attorneys for Plaintiff
and the class

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA CASEY, an individual, on behalf of herself and others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> 23andMe, INC., a corporation, and DOES 1-100, <br><br> Defendants. | CASE NO. '13 CV 2847 H    JMA <br><br> **Class Action Complaint for Violations of: Cal. Bus. & Prof. C. 17200, et seq., Cal. Bus. & Prof. C. 17500, et seq.; Cal. Civ. C. 1750, et seq.; Breach of Implied Warranties, Unjust Enrichment, and Misrepresentation** |

COMES NOW the Plaintiff, Lisa Casey, on behalf of herself and all others similarly situated, on information and belief, and for causes of action against the Defendant, and each of them, complains and alleges as follows:

## NATURE OF THE ACTION

1.    This proposed class action alleges that 23andMe, Inc. ("Defendant") falsely and misleadingly advertises their Saliva Collection Kit/Personal Genome Service ("PGS") as providing "health reports on 240+ conditions and traits", "drug response", "carrier status", among other things, when there is no analytical or clinical validation for the PGS

1  for its advertised uses.

2      2.      In addition, Defendant uses the information it collects from

3  the DNA tests consumers pay to take to generate databases and statistical

4  information that it then markets to other sources and the scientific

5  community in general, even though the test results are meaningless.

6      3      Despite Defendant's failure to receive marketing authorization

7  or approval from the Food and Drug Administration ("FDA"), Defendant

8  has slowly increased its list of indications for the PGS, and initiated new

9  marketing campaigns, including television advertisements in violation of

10  the Federal Food, Drug and Cosmetic Act ("FDC Act").

11                              **PARTIES**

12      4.      At all times herein relevant, Plaintiff Lisa Casey was and is a

13  resident of San Diego County, California.

14      5.      At all times herein mentioned, Defendant 23andMe, Inc., a

15  Delaware Corporation, was and is a corporation founded in 2006,

16  headquartered in Mountain View, California, existing under the laws of

17  the State of Delaware and doing business in the State of California and

18  elsewhere throughout the United States of America.

19                    **JURISDICTION AND VENUE**

20      6.      This Court has jurisdiction over the subject matter presented

21  by this Complaint because it is a class action arising under 28 U.S.C. §

22  1332(d), which, under the Class Action Fairness Act of 2005 ("CAFA"),

23  Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the

24  original jurisdiction of the Federal Courts of any class action in which any

25  member of the plaintiff class is a citizen of a state different from any

26  Defendant, and in which the matter in controversy exceeds in the

27  aggregate the sum of $5,000,000.00, exclusive of interest and costs.

28  Plaintiff alleges the amount in controversy here exceeds $5,000,000 among

5

1    the proposed nationwide Class, believed to number at least in the tens or
2    hundreds of thousands, potentially more, who are entitled to damages in
3    the amount of the purchase price of the PGS, currently sold by Defendant
4    for $99.00.

5           7.    This Court has personal jurisdiction over Defendant because
6    Defendant is authorized to do business and regularly conducts business
7    in California, and has marketed, designed, and sold PGS in California.
8    Defendant conducted business in California with Plaintiff Lisa Casey.
9    Defendant therefore has sufficient minimum contacts with this state to
10   render the exercise of jurisdiction by this Court permissible.

11          8.    Venue is proper under 28 U.S.C. §§ 1391(a-b) because a
12   substantial part of the events or omissions giving rise to Plaintiff's claims
13   occurred in this District.

14                    **COMMON FACTUAL ALLEGATIONS**

15          9.    PGS is a direct-to-consumer DNA genetic test.  After a
16   consumer purchases the PGS for $99.00 plus applicable taxes, Defendant
17   mails to the customer a packet including a saliva depository.  The
18   customer spits into the depository, thereby providing his or her DNA
19   sample, and mails the packet back to Defendant.  Defendant allegedly
20   runs a DNA test for 240+ conditions and traits, and mails a report to the
21   customer regarding the risks or family history characteristics such as
22   coronary heart disease or rheumatoid arthritis.  Additionally, the
23   customer can log-in to Defendant's website for more features.

24          A.  Defendant Advertises and Markets PGS as a Reliable Health Aid
25          10    To benefit Defendant's sales of PGS, Defendant advertises and
26   markets PGS in multiple media forms, including internet, print, and
27   television.

28          11.    A small sample of such advertising and marketing under the

5

"Health" tab of Defendant's website shows representations regarding the value of the PGS to a customer's health:

- "Learn hundreds of things about your health.  Using your DNA information, 23andMe helps you know more about your health so you can take an active role in managing it.  With reports on over 240+ health conditions and traits, here are a few of the things you'll learn about you."

- "Plan for the future.  Find out if your children are at risk for inherited conditions, so you can plan for the health of your family."

- "Living well starts with knowing your DNA."

- "Health tools - Document your family health history, track inherited conditions, and share the knowledge."

- "Drug response - Arm your doctor with information on how you might respond to certain medications."

- "Below are a few examples [diabetes, arthritis, coronary heart disease, breast cancer, plavix, lactose intolerance] where we can help you learn more.  And when you know more, you can make better lifestyle choices, look out for common conditions and take steps toward mitigating serious diseases."

(https://www.23andme.com/health/ Accessed 11/26/13)

12. Defendant markets and advertises specific examples of diseases and conditions for which the PGS can aid the consumer. Further, Defendant claims, "Get personalized recommendations.  Based on your DNA, we'll provide specific health recommendations for you." Defendant offers information on a consumer's risk regarding such serious

5

diseases as diabetes, coronary heart disease, and breast cancer. (https://www.23andme.com/health/ Accessed 11/26/13)

13.    Defendant describes the PGS service further:

> "23andMe is a DNA analysis service providing information and tools for individuals to learn about and explore their DNA. We use the Illumina HumanOmniExpress-24 format chip...Our chip consists of a fully custom panel of probes for detective single nucleotide polymorphisms (SNPs) selected by our researchers. The selection was made to maximize the number of actionable health and ancestry features available to customers as well as offer flexibility for future research."

14.    Defendants representations above are material to reasonable consumers.

<u>B.  Defendant Has Provided No Support for Such Advertisements and Marketing to FDA</u>

15.    Defendant has reaped the profit involved in marketing seemingly useful and reliable PGS health services while simultaneously failing to provide proof of the validity of such marketing claims to FDA in violation of the FDC Act.

16.    Beginning in July 2009, FDA worked diligently with Defendant to try to help Defendant comply with regulatory requirements regarding safety and effectiveness and to obtain marketing authorization for the PGS device.

17.    Then, FDA sent Defendant a "Warning Letter" on November 22, 2013, citing concerns over whether or not these tests work. The FDA cited concern about the public danger involved in false positives and false negatives for such serious health conditions purportedly tested by PGS.

18.   The FDA Warning Letter further indicated, among other things, that, "To date, 23andMe has failed to provide adequate information to support a determination that the PGS is substantially equivalent to a legally marketed predicate for any of the uses for which you are marketing it; no other submission for the PGS device that you are marketing has been provided under section 510(k) of the [FDC] Act, 21 U.S.C. § 360(k)."

19.   After more than 14 face-to-face meetings, hundreds of email messages, and dozens of written communications between Defendant and FDA concerning the public health consequences of inaccurate results from the PGS device, FDA has concluded, "...even after these many interactions with 23andMe, we still do not have any assurance that the firm has analytically or clinically validated the PGS for its intended uses..."

20.   After FDA cited specific examples of potential dangers to consumers, its letter states, "The risk of serious injury or death is known to be high when patients are either non-complaint or not properly dosed; combined with the risk that a direct-to-consumer test result may be used by a patient to self-manage, serious concerns are raised if test results are not adequately understood by patients or if incorrect test results are reported."

21.   Thus, Defendant has marketed and sold PGS to consumers for years without any analytical or clinical data to support the device's efficacy.  Despite lacking data to support their claims, Defendant made material representations to customers.

C.  For Years, Defendant Has Falsely, Unfairly, and Misleadingly Advertised and Marketed PGS for the Sole Benefit of Defendant and to the Detriment of Class Members

22.   Without clinical data, Defendant continues to make health and

efficacy claims about the PGS.  Without such claims, consumers would lack incentive to purchase the product.  Thus, Defendant has benefitted, and continues to benefit, from its misleading and unfair advertising and marketing.

23.    If the data is unknown or cannot be produced by researchers, the marketing claims are hollow and misleading, created without backing and with the aim of drawing customers to purchase the product.

24.    In a January 9, 2013 letter, Defendant stated to FDA that it was "completing the additional analytical and clinical validations for the tests that have been submitted" and "planning extensive labeling studies that will take several months to complete."  Thus, a full 5 years after the commencement of marketing the PGS to consumers, Defendant cannot support its marketing claims with scientific validation.  In the absence of validation, 5 years of marketing claims were unfair, deceptive, and misleading to the consumers who trusted Defendant with potentially life-altering health matters.

25.    Defendant also publishes "research" based on the test results it complies from individual consumers paying to have the PGS test administered, falsely claiming the results provide meaningful statistical data and useful scientific results.

26.    Plaintiff alleges that, in committing the wrongful acts alleged herein, Defendant, in concert with its subsidiaries, affiliates, and/or other related entities and their respective employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the PGS by means of misleading, deceptive and unfair representations, and that Defendant participated in the making of such representations in that it disseminated those misrepresentations and/or caused them to be disseminated.

5

27.    Defendant's misrepresentations and practices injured and caused Plaintiff and Class members to lose money or property in that they purchased an expensive product with the expectation that it was scientifically supported.

## PLAINTIFF'S FACTUAL ALLEGATIONS

28.    Plaintiff Lisa Casey purchased the product on September 19, 2013, having been exposed to Defendant's marketing via radio, print media, and online.

29.    Plaintiff provided her saliva sample, mailed the PGS to the indicated location, and then received an email on October 5, 2013 that her sample was received and sent to 23andMe's laboratory.

30.    Plaintiff received an email on October 27, 2013 stating, "Your health results as well as select ancestry features are ready to review.  DNA Relatives and Ancestry Composition rely on additional computation, and you'll receive an email when those are complete."

31.    Plaintiff received an email on November 19, 2013 stating that her complete ancestry results were now available.

## CLASS ACTION ALLEGATIONS

32.    Plaintiff brings this class-action lawsuit on behalf of herself and the proposed Class members under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

33.    Plaintiff seeks certification of the following Class:

All persons in any of the 50 United States and District of Columbia who purchased a 23andMe Saliva Collection Kit and Personal Genome Service within the Class Period.

Specifically excluded from the Class is the Defendant and any

5

entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and members of the judge's family.

34.   **Numerosity.**  Plaintiff does not know the exact number or identities of Class members but believes that the Class comprises tens of thousands, if not millions, of consumers nationwide.  As such, Class members are so numerous that joinder of all members is impracticable.

35.   **Commonality and predominance.**  Well-defined, common legal or factual questions affect all Class members.  These questions predominate over questions that might affect individual Class members. Common questions include, but are not limited to, the following:

A.  Whether Defendant's advertising, in any medium, was unfair, deceptive, untrue, or misleading;

B.  Whether Defendant's arbitration clause applies to Class members;

C.  Whether Defendant sold the PGS with knowledge of its ineffective, incomplete, unreliable, or misleading results;

D.  Whether Defendant's Terms of Service were adequately disclosed to Class members;

E.  Whether Defendant's Terms of Service contain unconscionable and/or illusory terms;

F.  Whether Defendant obtained appropriate and timely premarket approval from FDA to market the PGS;

G.  Whether Defendant's PGS report constitutes an unauthorized practice of medicine;

H.  Whether Defendant's Terms of Service choice of California law applies to Class members;

I.  Whether Defendant's promises of "health reports", "health

risks" and "a first step in prevention", among other promises, were likely to mislead objectively reasonable consumers;

   J.  Whether Class members are entitled to restitution and other equitable relief; and

   K.  Whether Class members are entitled to damages.

36.   **Typicality.**  Plaintiff's claim is typical of Class members' claims.  Plaintiff and Class members sustained similar injury as a direct result of purchasing the PGS as a result of deceptive advertising and without reliability of results.

37.   **Adequacy.**  Plaintiff will fairly and adequately represent and protect Class members' interests.  Plaintiff has no interests antagonistic to Class members.  Plaintiff has retained counsel with experience prosecuting consumer class-action and complex litigation claims.

38.   **Superiority.**  A class action is the superior method for fairly and efficiently adjudicating this controversy for the following reasons:

   A.   Class members' claims are relatively small compared to the expense and effort required to successfully litigate their claims individually.  Therefore, it would be impracticable for Class members to seek individual redress for Defendant's illegal conduct;

   B.   Even if Class members could afford the burden of individual litigation, the court system would be overwhelmed by such a burden.  Individual litigation creates the potential for inconsistent results and delays recovery/judgment for the parties involved.  In contrast, a class action presents far fewer management difficulties while providing the benefit of single adjudication, economy of scale, and comprehensive supervision by a

single court; and

c.   Plaintiff anticipates no unusual difficulties in managing a class action in this case.

## FIRST CAUSE OF ACTION

**Violation of Bus. & Prof. Code § 17200, et seq.**

**("unfair" and "fraudulent" prongs)**

(By Plaintiff and the Proposed Class Against Defendant)

39.   Plaintiff re-alleges and incorporates by reference the allegations set forth in this Class Action Complaint.

40.   This cause of action is brought on behalf of Plaintiff and members of the general public pursuant to the "unfair" and "fraudulent" prongs of Cal. Bus. & Prof. Code §§ 17200 et seq., which provide that "unfair competition shall mean and include any unlawful, unfair or deceptive business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter I (commencing with Section 17500) as Part 3 of Division 7 of the Business and Professions Code."

41.   As alleged above, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiff purchased the PGS that unfairly, unlawfully, deceptively, and misleadingly represented it would allow buyers to "[l]earn hundreds of things about your health," "[p]lan for the future," "[f]ind out if your children are at risk for inherited conditions, so you can plan for the health of your family," "[d]ocument your family health history, track inherited conditions, and share the knowledge," "[a]rm your doctor with information on how you might respond to certain medications," and learn more about the buyer's susceptibility to

5

conditions like diabetes, arthritis, coronary heart disease, breast cancer, plavix, and lactose intolerance. In fact, the PGS does none of those things and the results it provides are not supported by any scientific evidence.

42.    In its marketing and advertising, Defendant makes false and misleading statements regarding the uses and benefits of the PGS.

43.    The misrepresentations by Defendant are material facts and constitute an unfair and fraudulent business practice within the meaning of Business & Professions Code § 17200, et seq.

44.    Defendant's business practices, as alleged herein, are unfair and fraudulent because: (1) the injury to the consumer is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) consumers could not reasonably have avoided the information because Defendant intentionally mislead the consuming public by means of the claims made with respect to the PGS as set forth herein.

45.    Defendant's business practices as alleged herein are fraudulent because they are likely to deceive customers into believing that the Products have uses and benefits that they do not have.

46.    In addition, Defendant's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business & Professions Code § 17200, et seq.

47.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct of unfair competition because Defendant is marketing and selling the PGS in a manner likely to deceive the public.

5

48.     Plaintiff and the putative class members were misled into purchasing the Products by Defendant's deceptive conduct as alleged above. Plaintiff and other putative class members were misled because the misrepresentations and omissions were uniform and material.

49.     Pursuant to Business & Professions Code § 17203, Plaintiff and the members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its unfair and fraudulent practice of advertising the sale and use of the PGS products. Likewise, Plaintiff and the members of the Class seek an order requiring Defendant to cease claiming the PGS can allow consumers to "[l]earn hundreds of things about your health," "[p]lan for the future," "[f]ind out if your children are at risk for inherited conditions, so you can plan for the health of your family," "[d]ocument your family health history, track inherited conditions, and share the knowledge," "[a]rm your doctor with information on how you might respond to certain medications," and learn more about the buyer's susceptibility to conditions like diabetes, arthritis, coronary heart disease, breast cancer, plavix, and lactose intolerance. Plaintiff also requests an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's false and misleading representations.

50.     Plaintiff has suffered injury in fact and has lost money as a result of Defendant's false and misleading representations.

## SECOND CAUSE OF ACTION

### Violation of Bus. & Prof. Code § 17200, et seq.

### ("unlawful" prong)

(By Plaintiff and the Proposed Class Against Defendant)

51.     Plaintiff re-alleges and incorporates by reference the

5

1  allegations set forth in this Class Action Complaint.

2      52.    This cause of action is brought on behalf of Plaintiff and

3  members of the general public pursuant to the "unlawful" prong of the

4  Cal. Bus. & Prof. Code §§ 17200 et seq., which provides that "unfair

5  competition shall mean and include any unlawful, unfair or deceptive

6  business act or practice and unfair, deceptive, untrue or misleading

7  advertising and any act prohibited by Chapter I (commencing with

8  Section 17500) as Part 3 of Division 7 of the Business and Professions

9  Code."

10     53.    As alleged hereinabove, Plaintiff has standing to pursue this

11  claim as Plaintiff has suffered injury in fact and has lost money or

12  property as a result of Defendant's actions as set forth herein. Specifically,

13  prior to the filing of this action, Plaintiff purchased the PGS that unfairly,

14  unlawfully, deceptively, and misleadingly represented it would allow

15  buyers to "[l]earn hundreds of things about your health," "[p]lan for the

16  future," "[f]ind out if your children are at risk for inherited conditions, so

17  you can plan for the health of your family," "[d]ocument your family

18  health history, track inherited conditions, and share the knowledge,"

19  "[a]rm your doctor with information on how you might respond to certain

20  medications," and learn more about the buyer's susceptibility to

21  conditions like diabetes, arthritis, coronary heart disease, breast cancer,

22  plavix, and lactose intolerance. In fact, the PGS does none of those things

23  and the results it provides are not supported by any scientific evidence.

24     54.    In its marketing and advertising, Defendant makes false and

25  misleading statements regarding the uses and benefits of the PGS

26     55.    The misrepresentations by Defendant are material facts and

27  constitute an unlawful business practice.

28     56.    Defendant's business practices, as alleged herein, are unlawful

5

1  because: (1) they violate the Federal Food Drug and Cosmetic Act (21

2  U.S.C. §§ 301, et seq.) and the California Sherman Law (Health & Safety

3  Code § 110100, et seq.), (2) they violate sections 1770(a)(5), 1770(a)(7),

4  1770(a)(9) and 1770(a)(16) of the CLRA, Civil Code § 1750, et seq.; and (3)

5  they violate Business & Professions Code § 17500.

6       57.     Plaintiff and other putative class members were misled

7  because the misrepresentations and omissions were uniform and material.

8       58.     Pursuant to Business & Professions Code § 17203, Plaintiff and

9  the members of the Class seek an order of this Court enjoining Defendant

10  from continuing to engage, use, or employ its unfair and fraudulent

11  practice of advertising the sale and use of the Products. Likewise, Plaintiff

12  and the members of the Class seek an order requiring Defendant to cease

13  claiming the PGS can allow consumers to "[l]earn hundreds of things

14  about your health," "[p]lan for the future," "[f]ind out if your children are

15  at risk for inherited conditions, so you can plan for the health of your

16  family," "[d]ocument your family health history, track inherited

17  conditions, and share the knowledge," "[a]rm your doctor with

18  information on how you might respond to certain medications," and learn

19  more about the buyer's susceptibility to conditions like diabetes, arthritis,

20  coronary heart disease, breast cancer, plavix, and lactose intolerance.

21  Plaintiff also requests an order awarding Plaintiff and the Class restitution

22  of the money wrongfully acquired by Defendant by means of

23  responsibility attached to Defendant's false and misleading

24  representations.

25       59.     Plaintiff has suffered injury in fact and has lost money or

26  property as a result of Defendant's false representations.

27

28                    **THIRD CAUSE OF ACTION**

5

**False and misleading advertising in violation of**

**Bus. & prof. Code §§ 17500 et seq.**

(By Plaintiff and the Proposed Class Against Defendant)

60.     Plaintiff re-alleges and incorporates by reference the allegations set forth supra in this Class Action Complaint.

61.     This cause of action is brought pursuant to Business & Professions Code §§ 17500, et seq.

62.     Business & Professions Code § 17500 provides that it is unlawful for any person or corporation, or any employee thereof "with intent directly or indirectly to dispose of real or personal property... or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property... or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading..."

63.     In its advertising and marketing of the PGS, Defendant makes false and misleading statements that the PGS can allow consumers to "[l]earn hundreds of things about your health," "[p]lan for the future," "[f]ind out if your children are at risk for inherited conditions, so you can plan for the health of your family," "[d]ocument your family health history, track inherited conditions, and share the knowledge," "[a]rm your doctor with information on how you might respond to certain

medications," and learn more about the buyer's susceptibility to conditions like diabetes, arthritis, coronary heart disease, breast cancer, plavix, and lactose intolerance.

64.     Plaintiff purchased the PGS that unfairly, unlawfully, deceptively, and misleadingly represented it can allow consumers to "[l]earn hundreds of things about your health," "[p]lan for the future," "[f]ind out if your children are at risk for inherited conditions, so you can plan for the health of your family," "[d]ocument your family health history, track inherited conditions, and share the knowledge," "[a]rm your doctor with information on how you might respond to certain medications," and learn more about the buyer's susceptibility to conditions like diabetes, arthritis, coronary heart disease, breast cancer, plavix, and lactose intolerance.  In fact, the PGS does none of those things and the results it provides are not supported by any scientific evidence.

65.     Defendant engaged in the deceptive conduct alleged above, which included deceptive and untrue representations regarding the PGS product, made to induce the public to purchase the product.

66.     In its marketing and advertising, Defendant makes knowingly false and misleading statements regarding the ingredients, characteristics, uses and benefits of the Products.

67.     Defendant is aware that the claims that it makes about the Products are false and misleading.

68.     In addition, Defendant's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods, devices, or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business & Professions Code §§ 17500, et seq.

5

69.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

70.    Plaintiff and the putative class members were misled into purchasing the Products by Defendant's deceptive conduct as alleged hereinabove.

71. Plaintiff and other putative class members were misled and the misrepresentations and omissions were uniform and material.

72.    Pursuant to Business & Professions Code §§ 17203 and 17535, Plaintiff and the members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of advertising the sale and use of the Product claiming it can allow consumers to "[l]earn hundreds of things about your health," "[p]lan for the future," "[f]ind out if your children are at risk for inherited conditions, so you can plan for the health of your family," "[d]ocument your family health history, track inherited conditions, and share the knowledge," "[a]rm your doctor with information on how you might respond to certain medications," and learn more about the buyer's susceptibility to conditions like diabetes, arthritis, coronary heart disease, breast cancer, plavix, and lactose intolerance.   Plaintiff also requests an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's false and misleading representations.

73.    Plaintiff has suffered injury in fact and has lost money as a result of Defendant's false representations.

## **FOURTH CAUSE OF ACTION**

5

**Violations of Cal. Civ. Code §§ 1750 et seq.**

(By Plaintiff and the Proposed Class Against Defendant)

74.     Plaintiff re-alleges and incorporates by reference the allegations set forth supra in this Class Action Complaint.

75.     This cause of action is brought pursuant to Cal. Civ. Code §§ 1750 et seq., on behalf of himself and the Class.

76.     Plaintiff purchased the Product that unfairly, unlawfully, deceptively, and misleadingly represented it can allow consumers to "[l]earn hundreds of things about your health," "[p]lan for the future," "[f]ind out if your children are at risk for inherited conditions, so you can plan for the health of your family," "[d]ocument your family health history, track inherited conditions, and share the knowledge," "[a]rm your doctor with information on how you might respond to certain medications," and learn more about the buyer's susceptibility to conditions like diabetes, arthritis, coronary heart disease, breast cancer, plavix, and lactose intolerance.  In fact, the PGS does none of those things and the results it provides are not supported by any scientific evidence.

77.     Plaintiff is an individual who purchased the Product for personal, family or household purposes.

78.     The purchase of the PGS by Plaintiff and Class members were and are "transactions" within the meaning of Civil Code §1761(e).

79.     Defendant's marketing, labeling, advertising and sales of the PGS, that misleadingly claim PGS can allow consumers to "[l]earn hundreds of things about your health," "[p]lan for the future," "[f]ind out if your children are at risk for inherited conditions, so you can plan for the health of your family," "[d]ocument your family health history, track inherited conditions, and share the knowledge," "[a]rm your doctor with information on how you might respond to certain medications," and learn

more about the buyer's susceptibility to conditions like diabetes, arthritis, coronary heart disease, breast cancer, plavix, and lactose intolerance violated the CLRA in at least the following respects as set forth in detail above:

    a.    In violation of Civil Code §770(a)(5), Defendant represented that the PGS has characteristics, ingredients, uses, and benefits which it does not have;

    b.    In violation of Civil Code §1770(a)(7), Defendant represented that the PGS is of a particular standard, quality, or grade, which it is not.

    c.    In violation of Civil Code §1770(a)(9), Defendant advertised the PGS with an intent not to sell the PGS as advertised; and,

    d.    In violation of Civil Code §1770(a)(16), Defendant represented that the subject of the sale of the PGS has been supplied in accordance with a previous representation when it has not.

80.    Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights, and Defendant was wanton and malicious in its concealment of same.

81.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA because Defendant is still representing that the PGS has characteristics and abilities which it does not have, and has thus injured Plaintiff and the Class.

82.    Plaintiff and Class members have suffered injury in fact and have lost money or property as a result of Defendant's false representations.

83.    Pursuant to Civil Code § 1782, concurrently with the filing of this Complaint, Plaintiff will notify Defendant in writing by

certified mail of the alleged violations of section 1770 and demand that the same be corrected.  If Defendant fails to rectify or agree to rectify the problems associated with the action detailed above within 30 days of the date of written notice puruant to Civil Code § 1782, Plaintiff will amend this Complaint to add claims for actual, punitive and statutory damages, as appropriate in accordance with Civil Code § 1782(a) & (d).

84.     Plaintiff seeks damages and is entitled to equitable relief in the form of an order requiring Defendant to make full restitution to purchasers of the PGS of all monies wrongfully obtained as a result of the conduct described above.

85.     Plaintiff and Class members seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of advertising the sale and use of the PGS claiming it can allow consumers to "[l]earn hundreds of things about your health," "[p]lan for the future," "[f]ind out if your children are at risk for inherited conditions, so you can plan for the health of your family," "[d]ocument your family health history, track inherited conditions, and share the knowledge," "[a]rm your doctor with information on how you might respond to certain medications," and learn more about the buyer's susceptibility to conditions like diabetes, arthritis, coronary heart disease, breast cancer, plavix, and lactose intolerance.  Plaintiff also requests an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's false and misleading representations.

## FIFTH CAUSE OF ACTION

**Breach of warranty of merchantability and fitness for a particular purpose**

(By Plaintiff and the Proposed Class Against Defendant)

86.     Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though fully set forth herein.

87.     Defendants developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of commerce the PGS, in the course of same, directly advertised or marketed the PGS as described herein to the FDA and consumers, including Plaintiff.

88.     Defendants impliedly warranted their PGS device to be of merchantable quality and fit for the common, ordinary, and intended uses for which the product was sold.

89.     Defendants breached their implied warranties of the PGS product sold to Plaintiff and Class members because this product was not fit for its common, ordinary, and intended use.

90.     As a direct, foreseeable and proximate result of Defendant's breaches of implied warranties, plaintiff and Class members suffered injury and economic losses when Plaintiff and Class members purchased PGS in reasonable reliance upon the implied warranties.

## SIXTH CAUSE OF ACTION

### Unjust Enrichment

(By Plaintiff and the Proposed Class Against Defendant)

91.     Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though.

92.     Plaintiff and Class members bring this claim in the alternative to their Breach of Warranty claims.

5

93.     Defendant knowingly retained a benefit in the form of substantial revenues and payments from Plaintiff and Class members for PGS at the expense of Plaintiff and Class members from Defendant's conduct and misrepresentations regarding the reliability and accuracy of PGS.

94.     Plaintiff's and Class members' detriment and Defendant's enrichment are traceable to, and resulted directly and proximately from, the conduct challenged in this Complaint.

95.     It would be inequitable for Defendant to retain the benefits it received and continues to receive from Plaintiff and Class members without a payment to Plaintiff and Class members.

96.     Plaintiff and Class members may have no adequate other remedy at law.

97.     Plaintiff and the Class seek disgorgement of and/or a constructive trust on all of the inequitable payments and profits Defendant retained from Plaintiff and Class members.

## SEVENTH CAUSE OF ACTION

### Deceit by Concealment - Civil Code §§1709, 1710

(By Plaintiff and the Proposed Class Against Defendant)

98.     Plaintiff repeats and re-alleges the foregoing paragraphs, inclusive, and incorporates the same as if set forth herein at length.

99.     Defendant willfully deceived plaintiff by concealing from the plaintiff and the general public the true facts concerning the PGS which the defendant was obligated to disclose.  As set forth above, defendant knew in advance of Plaintiff and the class's use of the PGS, of the lack of scientific validity associated with the PGS

100.    Defendant concealed and failed to disclose the foregoing facts to plaintiff and the general public.

5

101.   As a result of the deceit by concealment by Defendant, plaintiff and the class suffered the injuries and damages set forth above.

## EIGHTH CAUSE OF ACTION

### Negligent Misrepresentation

(By Plaintiff and the Proposed Class Against Defendant)

102.   Plaintiff repeats and re-alleges the foregoing paragraphs, inclusive, and incorporates the same as if set forth herein at length.

103.   Defendant made false misrepresentations, as previously set forth herein, to plaintiff and the general public, including without limitation, the misrepresentation that the PGS was effective, scientifically valid, and could provide consumers with meaningful health-related information.

104.   Defendant made the foregoing representations without reasonable grounds for believing them to be true.  These representations were made directly by defendant and its authorized agents on the PGS packaging and in publications and other written materials directed to the public, with the intention of inducing reliance and the purchase and use of the Products.

105.   The foregoing representations by defendant was in fact false. The PGS is not effective, scientifically valid, and cannot provide consumers with meaningful health-related information.

106.   The foregoing representations by the defendant were made with the intention of inducing reliance resulting in the purchase and use of the PGS.

107.   In reliance on the above misrepresentations by defendant, plaintiff was induced to purchase and to use the PGS.  If plaintiff had known of the true facts and the facts concealed by defendant, plaintiff would not have purchased or used the PGS.

108.   Plaintiff's reliance on the misrepresentations by defendant was justified and reasonable in that such misrepresentations were made by individuals and entities that held themselves out as experts in the field of DNA testing and were in a position to know the true facts.

109.   As a result of the negligent misrepresentations by defendant, plaintiff suffered the injuries and damages set forth above.

WHEREFORE, plaintiff prays for judgment against the defendants, and each of them, as follows:

1.   For an order certifying that the action may be maintained as a class action, certifying Plaintiff as representative of the Class, and designating his attorneys Class counsel;

2.   For an award of equitable relief as follows:(a) Enjoining Defendant from making any claims for the Products found to violate the UCL, FAL, or CLRA as set forth above; and (b) Requiring Defendant to make full restitution of all monies wrongfully obtained as a result of the conduct described in this Complaint;

3.   For an award of attorney's fees pursuant to, inter alia, §1780(d) of the CLRA and Code of Civil Procedure §1021.5.

4.   For actual damages in an amount to be determined at trial;

5.   For actual, statutory, and punitive damages as may be provided for by statute under the Fourth Cause of Action for violations of the CLRA if the demanded corrections do not occur within the thirty (30) day notice period;

6.   Costs of this suit;

7.   Pre- and post-judgment interest on any amounts awarded; and

8.   Providing such further relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues so triable.

DATED:  November 27, 2013                    ANKCORN LAW FIRM, PC


                                    By:    s/Mark Ankcorn
                                           MARK ANKCORN
                                           Attorneys for Plaintiff
                                           mark@cglaw.com

5